Jay V. Surgent, Esq. - N.J. Atty. ID No. 009631976
Jay R. McDaniel, Esq. - N.J. Atty. ID No. 011481992
**WEINER LAW GROUP LLP**
**629 Parsippany Road, P.O. Box 0438**
**Parsippany, New Jersey 07054**
**Telephone: (973) 403-1100; Fax: (973) 403-0010**
**Attorneys for Defendant Kurt Streams**
1693096_1

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Civil Action No. 1:19-cv-16290 |
| Plaintiff, | Civil Action |
| vs. | |
| GERARD F. HUG and KURT W. STREAMS, | **ANSWER OF DEFENDANT KURT STREAMS; JURY DEMAND** |
| Defendants. | |

Defendant Kurt Streams ("Streams"), by his undersigned counsel, answers the Complaint of Plaintiff Securities and Exchange Commission ("SEC") as follows:

## SUMMARY

1.      This case concerns fraudulent, undisclosed expense abuses by Gerard F. Hug and Kurt W. Streams, respectively, the former Chief Executive Officer ("CEO") and former Chief Financial Officer ("CFO") of SITO Mobile, Ltd. ("SITO").

Answer: Paragraph 1 of the Complaint is a summary of the matters alleged in the Complaint to which no response is required. To the extent that a response is required, the allegation is denied.

1

2.      From the time he became SITO's CEO in August 2014 until his resignation in February 2017, Defendant Hug knowingly and improperly charged in excess of $100,000 of non-business expenses to SITO's corporate charge card.  Hug regularly used the corporate card to pay for personal expenses such as airfare for family trips, sporting tickets, designer clothes, and resort stays.

Answer:  This allegation is not directed to Streams and accordingly no response is required.  To the extent that a response is required, the allegation is denied.

3.      From 2014 until his resignation from SITO in early 2017, Defendant Streams, SITO's CFO, knowingly and improperly used in excess of $200,000 of SITO funds to pay for his personal living expenses.  Using a debit charge card issued in his name and connected to SITO's corporate account, Defendant Streams used corporate funds to pay for personal meals, commuting costs, his Netflix and Amazon Prime subscriptions, pet groomers, eyewear, and vacations.  Defendant Streams also improperly withdrew cash from a SITO corporate account to pay for personal expenses.

Answer: Denied.

4.      To deceive SITO into paying for their personal expenses, Defendants Hug and Streams disguised their fraudulent conduct by coding their personal expenses in the company's systems as legitimate business expenses and, on occasion, by submitting false requests for reimbursement of purportedly business-related expenses that misstated the true character of their expenses.  Although SITO's policies and procedures required Defendants Hug and Streams to submit expense reports with accompanying receipts or justification, they often failed to do so.

Answer:  Denied.

5.      Defendants Hug and Streams, as SITO's respective CEO and CFO, were responsible for SITO's internal accounting controls, but failed to implement and/or exercise sufficient controls over corporate expense reimbursement and cash withdrawals.  Defendants failed to enforce SITO's expense payment controls, which required employees to justify that their charges were for legitimate corporate purposes.

Answer:  Denied, except it is admitted that Streams served as CFO of SITO.

6.      As SITO's CFO, Defendant Streams reviewed, determined the need for, and approved the expense reimbursements of other SITO employees including those of Defendant Hug.

Answer: Denied, as the CFO did not review individual expense reimbursements, except admit that Streams review and approved some of Defendant Hug's submissions for expense reimbursements.

7.      Due to the misconduct of Defendants Hug and Streams, the purported business expenses reimbursed to Defendants Hug and Streams, and the improper cash withdrawals by Streams, were not accurately recorded in SITO's books and records.

Answer:  Denied.

8.      As part of their fraudulent scheme, Defendants Hug and Streams signed SITO's annual reports on Form 10-K for fiscal years 2014 and 2015, and also for the transitional period on Form 10-KT in 2015, and certifications contained in those reports, which were filed with the SEC.  Defendants Hug and Streams also signed management representation letters, provided to SITO's external auditors in connection with audits of the company's 2014 and 2015 financial statements, in which they falsely represented that they had no knowledge of management fraud.

In addition, SITO filed proxy statements in 2015 and 2016, that did not disclose the personal expenses of Hug and Streams as compensation, as required by law.

Answer: Denied, except admit that Streams signed the annual reports and management representation letters reference in the allegations.

9.      Defendants Hug and Streams knew, or were reckless in not knowing, that SITO's filings with the SEC contained materially false and misleading executive compensation disclosures, and they omitted, among other things, numerous personal expenses for which Defendants were improperly reimbursed using SITO corporate funds.  Furthermore, Defendants Hug and Streams knew, or were reckless in not knowing, that contrary to their certifications in annual reports and proxy statements, they were aware of management fraud. Specifically, they knew that they personally were misappropriating corporate funds.

Answer: Denied.

10.     Because Defendants failed to implement sufficient internal accounting controls, improper and unauthorized payments to them were not accurately recorded in the company's books and records. As a result, SITO's annual reports and proxy statements materially understated the compensation paid to Defendants in the form of personal benefits.  These annual reports and proxy statements were incorporated by reference in registration statements offering shares of SITO's common stock.  Defendants' fraudulent conduct resulted in SITO's materially misstated books and records, annual reports, and proxy statements.

Answer: Denied.

## VIOLATIONS

11.     As a result of the foregoing conduct and as alleged further herein, Defendants violated the antifraud provisions in Sections 17(a)(1) and (3) of the Securities Act of 1933

("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)], the antifraud provisions in Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], the accounting controls provisions of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)], the false certifications provisions of Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14], the falsification of accounting records provisions of Rule 13b2-1 of the Exchange Act [17 C.F.R. § 240.13b2-1], and the lying to auditors provisions of Rule 13b2-2 of the Exchange Act [17 C.F.R. § 240.13b2-2].

Answer: Denied

12.     In engaging in the foregoing conduct and as alleged further herein, Defendants also aided and abetted the violations by SITO of the reporting provisions of Section 13(a) of the Exchange Act [15 U.S.C. §§ 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1], the books and records provisions of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)], the internal controls provisions of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)], and the proxy provisions of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

Answer: Denied.

13.     Unless Defendants are permanently restrained and enjoined, they will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint and in acts, practices, transactions, and courses of business of similar type and object.

Answer: Denied.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)] and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a)].

Answer: Admitted.

15.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws alleged in this Complaint occurred within the District of New Jersey.  For example, Defendants worked in SITO's corporate offices in Jersey City, New Jersey, and there, on many occasions, improperly recorded payments for the benefit of, and sought reimbursements to, themselves as business expenses, and not compensation.

Answer: Admitted.

16.     Each Defendant, directly and indirectly, made use of means or instruments of transportation or communication in interstate commerce, or of the mails, or of any facility of a national securities exchange in connection with the acts, practices, and courses of conduct alleged herein.

Answer: Streams denies the wrongful conduct asserted in the allegations, but admits the Plaintiff alleges use of means or instruments of transportation or communication in interstate commerce, or of the mails, or of any facility of a national securities exchange in connection with the acts, practices, and courses of conduct described in the Complaint.

## DEFENDANTS

17.     Gerard F. Hug resides in New Jersey.  After originally joining SITO in 2011, he served as CEO and director of the company from August 2014 until his resignation on February 17, 2017.

Answer: Admitted.

18.      Kurt W. Streams resides in Connecticut. He was SITO's CFO from November 2013 until his resignation on March 10, 2017, and SITO's Chief Operating Officer ("COO") from December 2016 until his resignation. During the relevant time frame, he was a Certified Public Accountant ("CPA") and maintained his CPA license in New York, until it lapsed.

Answer: Admitted, except that Defendant Streams ceased practicing as a CPA in 2009.

## RELEVANT ENTITY

19.     **SITO Mobile, Ltd.**, a Delaware corporation with its principal place of business in Jersey City, New Jersey, provides mobile data advertising platforms that enable its clients to push to consumers mobile advertisements, coupons and the like, based on location data derived from mobile devices.  SITO's common stock is registered with the SEC pursuant to Section 12(b) of the Exchange Act, and its securities are traded on the NASDAQ Capital Market.

Answer:  Admit that SITO Mobile Ltd. ("SITO") is a Delaware corporation that during the term of Streams employment maintained its principal place of business in Jersey City, New Jersey, and that SITO has registered common stock with the SEC and that its stock is quoted on the NASDAQ beginning in August 2015, before which its stock was quoted on Over-the-Counter.  Streams is without information sufficient to form a belief as to the manner in which SITO common stock presently trades or the ongoing nature of the business of SITO.  Streams

7

avers that during the term of his employment SITO engaged in mobile data advertising and the compilation and use of consumer data used in digital advertising.

## **FACTUAL ALLEGATIONS**

### **Hug and Streams Expense Abuses**

20.     Defendants Hug and Streams agreed in their employment contracts, executed in 2011 and 2013, respectively, that they were "entitled to reimbursement of documented reasonable business expenses incurred by [them] in the discharge of [their] duties hereunder, in accordance with the policies and procedures" of SITO.

Answer: Deny knowledge or information sufficient to form a belief as to the employment contract of Defendant Hug and admitted as to Defendant Streams.

21.      From 2014 through 2016, SITO maintained an employee handbook, which outlined several policies, including procedures for reimbursement when employees incurred SITO-related business expenses.  The employee handbook stated that SITO would "reimburse an employee for reasonable expenses incurred while traveling for business… and other expenses incurred in connection with the performance of [their] job."  To be eligible for reimbursement, employees were required to obtain supervisor approval, and submit a completed Travel and Expense Reimbursement Form with original receipts.

Answer: Deny knowledge or information sufficient to form a belief as the allegations in this paragraph of the Complaint.

22.      In calendar years 2014 through 2016, Defendant Hug improperly and without authority used SITO's charge card to pay for various personal expenses exceeding $100,000. For example, he improperly charged a total of over $7,000 to the SITO charge card account for his fiftieth birthday party and over $4,000 for his child's sixteenth birthday party.  For both birthday

parties, Hug subsequently directed SITO's accounting department to record all related costs as business expenses.

Answer:  Deny present knowledge or information sufficient to form a belief and refer to a prior analysis of expenses conducted for the SITO Board of Directors in 2017.

23.     From 2014 through 2017, Defendant Streams used a SITO-issued debit card, which was chargeable to a SITO corporate account, to improperly and without authority charge in excess of $200,000 in personal expenses that ranged from routine daily personal living expenses to expensive personal vacations.  For example, in 2015, Defendant Streams used the SITO corporate debit card to make over eight hundred personal charges totaling over $40,000 to cover daily living expenses that ranged in amount from $0.99 to $390 and included purchases at fast food restaurants, drug stores, liquor stores, grocery stores, convenience stores, eye wear providers, movie theaters, book stores, coffee shops, and gas stations. Approximately three hundred of those charges were made at businesses in and around Defendant Streams' home in Connecticut, which was approximately sixty miles from SITO's offices in Jersey City. Defendant Streams was not authorized to charge to SITO's account these personal expenses.

Answer: Denied, except Defendant Streams admits to using a Wells Fargo Bank issued debit card was chargeable to SITO's Wells Fargo Bank checking account to charge authorized legitimate SITO business expenses, and admit that Defendant Streams made accidental use of the debit card and reimbursed SITO for any charges so incurred.

24.     Defendant Streams also used the SITO corporate charge card to improperly and without authority pay for expensive personal trips. For example, between Friday, April 15, 2016 and Monday, April 18, 2016, Defendant Streams took a personal trip to Punta Cana in the Dominican Republic and caused SITO to pay approximately $4,000 in expenses associated with

that trip, including a limousine ride to the airport, $1,900 for lodging, and $1,200 in food and drink at various restaurants and bars in and around Punta Cana.  Defendant Streams was not authorized to charge to SITO the cost of his Punta Cana trip.

Answer: The allegations are denied except Defendant Streams admits to having reimbursed SITO for the accidental use of the debit card during a personal trip.

25.      Each month SITO's accounting personnel provided Defendant Streams with a spreadsheet detailing his use of the SITO debit card, requesting that he provide a general ledger code for each of his charges.  For example, to ensure a legitimate business trip was properly recorded in SITO's books and records, SITO utilized general ledger codes for "airfare/train" "auto/taxi expense," "meals," and "lodging."  For his use of the SITO debit card in Punta Cana, Defendant Streams provided general ledger codes for lodging, meals, and auto/taxi expenses that resulted in certain costs from his personal vacation to be improperly recorded in SITO's books and records as business trip expenses payable by SITO.  In this same manner, Streams repeatedly improperly coded as business expenses his use of the SITO debit card to pay for his unauthorized personal expenses.

Answer: Denied.

26.      In violation of company policy, Defendant Streams failed to submit expense documentation, or only submitted limited documentation, related to his expenditure of SITO corporate funds with respect to his unauthorized and improper personal expense charges to SITO's corporate account.

Answer: Denied.

27.      Defendant Hug also received a spreadsheet from SITO's accounting group that detailed his charges to the SITO charge card and directed Hug to provide a general ledger

10

expense code for each charge.  Hug repeatedly improperly coded his personal charges to the SITO charge card as legitimate business expenses.  Indeed, Hug generally did not point out obvious and improper personal uses of the SITO charge card detailed herein.

Answer: Defendant Streams is without knowledge or information sufficient to form a belief as to the spreadsheets described in this allegation.

28.     From 2015 through 2017, Defendant Streams was responsible for reviewing his and other employees' expenses charged to the SITO charge card account.  Defendant Streams was the only SITO employee who reviewed the general ledger coding for his own expenses to the company-issued debit card in his possession.  Because he knowingly or recklessly mischaracterized his own personal expenses as corporate expenses and further approved his own improper expense reimbursements, SITO's books and records were false and inaccurate.

Answer:  Denied.

**False and Misleading SEC Filings, Certifications, and Representations**

**1.     False Proxy Statements**

29.     Certain regulations of the SEC require that an issuer disclose information about executive compensation. In particular, Item 11 of Form 10-K requires that registrants furnish the information required by Item 402 of Regulation S-K.

Answer:  Paragraph 29 summarizes a provision of Form 10-k.  Streams admits the allegation provides a summary of Form 10, but refers to the Form for a statement of its contents, which is incorporated here by reference.

30.      Item 402, in turn, requires disclosure of "all plan and non-plan" compensation "awarded to, earned by, or paid to" named executive officers (including CEOs and CFOs). Similarly, Item 8 of Schedule 14A requires that registrants set forth in a proxy statement the

information required by Item 402 of Regulation S-K if action is to be taken with respect to, among other things, the election of directors. Item 402(c)(2)(ix)(A) requires disclosure of the total value of all "[p]erquisites and other personal benefits" provided to named executive officers who receive $10,000 or more in such perquisites or other benefits in a given year.  For smaller reporting companies, such as SITO, perquisites and other personal benefits shall be valued as the incremental cost to the company.  This disclosure is required to be made in the "All Other Compensation" column of a Summary Compensation Table.

Answer: Paragraph 30 summarizes a provision of Form 10-k.  Streams admits the allegation provides a summary of Form 10, but refers to the Form for a statement of its contents, which is incorporated here by reference.

31.    Defendants' unauthorized and improper charges paid with SITO's corporate funds, were not disclosed as personal benefits or perquisites in the Summary Compensation Tables in SITO's proxy statements filed for the fiscal years 2014 and 2015, as required. In fact, SITO disclosed no perks or personal benefits for any of its executives in their SEC filings.

Answer:  Deny the allegations of this Paragraph 31, except admit that SITO provided Summary Compensation Tables in its proxy statements during the term of Streams employment and that such tables did not include any items for the matters alleged in this Complaint, which Streams denies.  Streams refers the Court to the Summary Compensation Tables for a statement of their contents.

32.    SITO used these inaccurate proxy statements to solicit annual shareholder votes to elect directors, including Defendant Hug. The inaccurate proxy statements also solicited non-binding advisory votes from shareholders on executive compensation, including Defendants' 2015 and 2016 compensation.

Answer: Denied, except admit that SITO issued proxy statements for fiscal years 2014 and 2015.

### 2.     False Annual Reports

33.     SITO's annual reports incorporated the above proxy statements by reference with respect to executive compensation required to be reported in the annual reports.  Consequently, SITO's annual reports for fiscal years 2014 and 2015 also materially understated Defendants' compensation.

Answer:  Denied, except admit that SITO issued annual reports for fiscal years 2014 and 2015 and refer to the reports for a statement of their contents, which are incorporated herein by reference.

34.     Defendants signed SITO's annual reports on Form 10-K for fiscal years 2014 and 2015, and also for the transitional period on Form 10-KT in 2015 when the company changed to a calendar year-end from a fiscal year ended September 30.

Answer: Admitted.

### 3.     False Certifications

35.     SITO's 2014 and 2015 annual reports included certifications required by the Sarbanes-Oxley Act ("SOX"), pursuant to Rule 13a-14(a) of the Exchange Act, which were signed individually by Defendants, who knew or were reckless in not knowing, that their certifications were misleading.  The certifications falsely declared that based on their knowledge the reports did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statement made, in light of the circumstances under which such statements were made, not misleading.  Defendants knew or were reckless in not knowing that they had fraudulently submitted, and were improperly reimbursed for, personal expenses.

Answer: Denied, except admit that the 2014 and annual reports included the requisite SOX certifications.

36.     Defendant Hug also knowingly and falsely certified that he had disclosed any fraud by management to the company's audit committee and the company's auditor, whether or not material.

Answer: Denied.

37.     Defendants Hug and Streams also signed management representation letters that were provided to SITO's auditors with respect to audits of SITO's 2014 and 2015 financials, in which they falsely declared that they had no knowledge of management fraud.

Answer: Denied.

38.     In testimony during the SEC staff's investigation, Defendant Hug asserted his privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution as to every substantive question the SEC staff asked him about his tenure at SITO.

Answer: Streams is without knowledge or information to form a belief about the allegation in this Paragraph 38,

39.     In testimony during the SEC staff's investigation, Defendant Streams was granted an adjournment to consult with counsel about whether to assert his privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution and subsequently refused to appear before SEC staff to resume his testimony.

Answer: Admitted.

## **TOLLING AGREEMENTS**

40.     Between November 2018 and March 2019, Defendant Hug executed two separate tolling agreements with the Commission. Each tolling agreement specifies a period of time (a "tolling period") in which "the running of any statute of limitations applicable to any action or proceeding against [Defendant] authorized, instituted, or brought by … the Commission… arising out of the [Commission's investigation of Defendant's conduct], including any sanctions or relief that may be imposed therein, is tolled and suspended…."  Each tolling agreement further provides that the Defendant "shall not include the tolling period in the calculation of the running of any statute of limitations or for any other time-related defense applicable to any proceeding, including any sanctions or relief that may be imposed therein, in asserting or relying upon any such time-related defenses."  Collectively, these agreements tolled the running of any limitations period or any other time-related defenses available to Defendant Hug, thereby preserving the timeliness of the Commission's claims as to all the conduct alleged herein.

Answer: Streams is without knowledge or information to form a belief about the allegation in this Paragraph 40.

41.     Between January 2019 and March 2019, Defendant Streams executed two separate tolling agreements with the Commission. Each tolling agreement specifies a period of time (a "tolling period") in which "the running of any statute of limitations applicable to any action or proceeding against [Defendant] authorized, instituted, or brought by … the Commission… arising out of the [Commission's investigation of Defendant's conduct], including any sanctions or relief that may be imposed therein, is tolled and suspended…."  Each tolling agreement

further provides that the Defendant "shall not include the tolling period in the calculation of the running of any statute of limitations or for any other time-related defense applicable to any proceeding, including any sanctions or relief that may be imposed therein, in asserting or relying upon any such time-related defenses."  Collectively, these agreements tolled the running of any limitations period or any other time-related defenses available to Defendant Streams, thereby preserving the timeliness of the Commission's claims as to all the conduct alleged herein.

Answer: Admitted.

## FIRST CLAIM FOR RELIEF

### Fraud in Connection With the Purchase of Securities Violations of Section 10(b) of the Exchange Act and Rule 10b-5 (Defendants Hug and Streams)

42.       The SEC re-alleges and incorporates by reference paragraphs 1 through 41, above.

Answer: Streams incorporates by reference each of his prior answers.

43.       Defendants, by engaging in the conduct alleged above, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or a facility of a national securities exchange: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon other persons.

Answer: Denied.

44.     While engaging in the conduct alleged above, Defendants acted with scienter, that is, with the intent to deceive, manipulate, or defraud with reckless disregard of the truth.

Answer: Denied.

45.     By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

Answer: Denied.

## SECOND CLAIM FOR RELIEF

**Fraud in Connection With the Offer or Sale of Securities Violations of
Section 17(a)(1) of the Securities Act
(Defendants Hug and Streams)**

46.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

47.     Defendants, by engaging in the conduct alleged above, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or by use of the mails, employed devices, schemes or artifices to defraud.

Answer: Denied.

48.     While engaging in the conduct alleged above, Defendants acted with scienter, that is, with the intent to deceive, manipulate, or defraud with reckless disregard of the truth.

Answer: Denied.

49.     By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

17

Answer: Denied.

## **THIRD CLAIM FOR RELIEF**

**Fraud in Connection with the Offer or Sale of Securities Violations of
Section 17(a)(3) of the Securities Act
(Defendants Hug and Streams)**

50.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

51.     Defendants, by engaging in the conduct alleged above, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or by use of the mails, engaged in transactions, practices or courses of business that operated or would operate as a fraud or deceit upon purchasers or prospective purchasers of securities.

Answer: Denied.

52.     While engaging in the conduct alleged above, Defendants acted unreasonably.

Answer: Denied.

53.     By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

Answer: Denied.

## **FOURTH CLAIM FOR RELIEF**

**False Sarbanes-Oxley Certification Violations of Rule 13a-14
(Defendant Hug)**

54.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer:  The allegations in this Fourth Claim are directed to Defendant Hug, accordingly no response is required.

55.     From December 2014 to June 2016, Defendant Hug signed certifications that were required to be made pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 and Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14].  In each signed certification, Defendant Hug falsely and unreasonably certified that (i) based on his knowledge, the report did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statement made, in light of the circumstances under which such statement was made, not misleading; and (ii) based upon his most recent evaluation of SITO's internal control over financial reporting, he had disclosed any fraud, whether or not material, involving management to the audit committee and the auditors.

Answer: The allegations in this Fourth Claim are directed to Defendant Hug, accordingly no response is required.

56.     By engaging in the conduct described above, Defendant Hug violated Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14] and unless restrained and enjoined will continue to do so.

Answer: The allegations in this Fourth Claim are directed to Defendant Hug, accordingly no response is required.

## FIFTH CLAIM FOR RELIEF

### False Sarbanes-Oxley Certification Violations of Rule 13a-14
### (Defendant Streams)

57.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

58.     From December 2014 to June 2016, Defendant Streams signed certifications that were required to be made pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 and Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14].  In each signed certification, Defendant

19

Streams falsely and unreasonably certified that (i) based on his knowledge, the report did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statement made, in light of the circumstances under which such statement was made, not misleading; and (ii) based upon his most recent evaluation of SITO's internal control over financial reporting, he had disclosed any fraud, whether or not material, involving management to the audit committee and the auditors.

Answer: Denied.

59.     By engaging in the conduct described above, Defendant Streams violated Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14] and unless restrained and enjoined will continue to do so.

Answer: Denied.

## SIXTH CLAIM FOR RELIEF

### Lying to Auditors and Falsification of Books and Records Violations of Rules 13b2-2 and 13b2-1 of the Exchange Act
### (Defendants Hug and Streams)

60.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

61.     Defendant Hug, by engaging in the conduct above, directly or indirectly: (i) made, or caused to be made, materially false or misleading statements; or (ii) omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with an audit, review, or examination of financial statements or the preparation or filing of a document report required to be filed with the SEC, including SITO's annual reports on Form 10-K filed for reporting years 2014 and 2015.

Answer:  Denied.

62.    Defendant Streams, by engaging in the conduct above, directly or indirectly: (i) made, or caused to be made, materially false or misleading statements; or (ii) omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with an audit, review, or examination of financial statements or the preparation or filing of a document report required to be filed with the SEC, including SITO's annual reports on Form 10-K filed for reporting years 2014 and 2015.

Answer:  Denied.

63.    By engaging in the conduct alleged above, Defendants also, directly or indirectly, falsified or caused to be falsified books, records, or accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

Answer:  Denied.

64.    By engaging in the conduct described above, Defendants violated Rules 13b2-2 and 13b2-1 of the Exchange Act [17 C.F.R. §§ 240.13b2-2 and 240.13b2-1] and unless restrained and enjoined will continue to do so.

Answer: Denied.

## SEVENTH CLAIM FOR RELIEF

**Circumventing and Failing to Implement a System of Accounting Controls**
**Violations of Section 13(b)(5) of the Exchange Act**
**(Defendants Hug and Streams)**

65.    The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

66.     By engaging in the conduct alleged above, Defendants knowingly circumvented or knowingly failed to implement a system of internal accounting controls or, directly or indirectly, knowingly falsified or caused to be falsified books, records, or accounts subject to Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

Answer:  Denied.

67.     By engaging in the conduct described above, Defendants violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and, unless restrained and enjoined, will continue to do so.

Answer: Denied.

## EIGHTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of the Reporting Provisions by SITO Violations of Section 13(a) and Rules 12b-20 and 13a-1 Thereunder
(Defendants Hug and Streams)**

68.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

69.     Defendant Hug, by engaging in the conduct described above, provided substantial assistance to SITO, which was an issuer of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], and filed with the SEC annual reports on Form 10-K from December 2014 to June 2016 that made untrue statements of material fact or omitted to state material facts necessary in order to make the required statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

Answer:  Denied.

70.     Defendant Streams, by engaging in the conduct described above, provided substantial assistance to SITO, which was an issuer of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], and filed with the SEC annual reports on Form 10-K from December 2014 to June 2016 that made untrue statements of material fact or omitted to state material facts necessary in order to make the required statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

Answer: Denied.

71.     While engaged in the conduct described above, Defendants acted knowingly or recklessly.

Answer:  Denied.

72.     By engaging in the conduct described above, Defendants aided and abetted SITO's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1] and, unless restrained and enjoined, will continue to do so.

Answer:  Denied.

## NINTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of the Books and
Records and Internal Controls Provisions by SITO Violations of
Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act
(Defendants Hug and Streams)**

73.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

74.     Defendant Hug, by engaging in the conduct described above, provided substantial assistance to SITO, an issuer which failed to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of its assets from August 2014 to February 2017, as required by Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

Answer:  Denied.

75.     Defendant Hug, by engaging in the conduct described above, provided substantial assistance to SITO, an issuer which failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are executed in accordance with management's general or specific authorization, that transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria and to maintain accountability for assets, that access to assets is permitted only in accordance with management's general or specific authorization, and that the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences, as required by Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

Answer: Denied.

76.     Defendant Streams, by engaging in the conduct described above, provided substantial assistance to SITO, an issuer which failed to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of its assets from July 2014 to March 2017, as required by Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

Answer: Denied.

77.     Defendant Streams, by engaging in the conduct described above, provided substantial assistance to SITO, an issuer which failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are executed in accordance with management's general or specific authorization, that transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria and to maintain accountability for assets, that access to assets is permitted only in accordance with management's general or specific authorization, and that the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences, as required by Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

Answer: Denied.

78.     While engaged in the conduct described above, Defendants acted knowingly or recklessly.

Answer: Denied.

79.     By engaging in the conduct described above, Defendants aided and abetted SITO's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] and, unless restrained and enjoined, will continue to do so.

Answer: Denied.

### **TENTH CLAIM FOR RELIEF**

**Aiding and Abetting Violations of the Proxy Provisions by SITO
Violations of Section 14(a) of the Exchange Act and
Rules 14a-3 and 14a-9 Thereunder
(Defendants Hug and Streams)**

80.     The SEC re-alleges and incorporates by reference paragraphs 1 through 41 above.

Answer: Streams incorporates by reference each of his prior answers.

25

81.     Defendants, by engaging in the conduct described above, provided substantial assistance to SITO's violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9], by its use of the mails or the means or instrumentalities of interstate commerce or of any facility of a national securities exchange or otherwise, to directly or indirectly solicit or permit the use of its name to solicit proxies with respect to securities issued by SITO and registered with the SEC, in contravention of such rules and regulations as the SEC has prescribed, which prohibit the solicitation of proxies without required information or with proxy statements that contain any false or misleading statement with respect to any material fact, or that omit any material fact necessary to make the statements made not false or misleading.

Answer: Denied.

82.     While engaged in the conduct described above, Defendants acted knowingly or recklessly.

Answer: Denied.

83.     By engaging in the conduct described above, Defendants aided and abetted SITO's violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9] and, unless restrained and enjoined, will continue to do so.

Answer: Denied.

**WHEREFORE,** Defendant Kurt Streams demands judgment dismissing the Complaint, for costs, fees and such other and further relief as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

Streams asserts the following affirmative or other defenses without assuming the burden of proof on any such defense where burden of proof on the defense would otherwise rest with Plaintiff.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to join as parties name persons or entities whose joinder is required by Fed. R. Civ. P. 19.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to comply with the particularity requirement of Fed. R. Civ. P. 8 and 9(b) and the Private Securities Litigation Reform Act.

### FOURTH AFFIRMATIVE DEFENSE

The claims alleged in the Complaint are barred in whole or in part by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

The claims alleged in the Complaint are barred in whole or in part by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

The claims alleged in the Complaint are barred in whole or in party by the doctrine the failure to establish injury to the business or property of any party by reason of the action of the defendants.

## SEVENTH AFFIRMATIVE DEFENSE

The claims alleged in the Complaint are barred in whole or in part to the extent that the matters complained of were the result of the actions of third parties over which Streams had no control or right of control.

## EIGHTH AFFIRMATIVE DEFENSE

The claims alleged in the Complaint are barred by the ratification of the wrongs alleged by the party(ies) purportedly injured by the conduct alleged.

## JURY DEMAND

Streams demands trial by jury of all issue so triable.

Dated: October 22, 2019

                              /s/ Jay R. McDaniel

                    By:_____

                    Jay V. Surgent, Esq. - N.J. Atty. ID No. 009631976
                    Jay R. McDaniel, Esq.  - N.J. Atty. ID No. 011481992
                    **WEINER LAW GROUP LLP**
                    629 Parsippany Road, P.O. Box 0438
                    Parsippany, New Jersey 07054
                    Telephone: (973) 403-1100;  Fax: (973) 403-0010
                    Attorneys for Defendant Kurt Streams